UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
LONDON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| Plaintiff, | ) ) No. 6:19-CR-02-CHB-HAI ) |
| v. | ) ) RECOMMENDED DISPOSITION |
| MICHAEL BOWLING, | ) ) |
| Defendant. | ) ) |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

On referral from District Judge Boom (D.E. 7), the Court considers reported violations of supervised release conditions by Defendant Michael Bowling. This case was recently transferred from the Western District of Kentucky. D.E. 1.

Judge Simpson entered a judgment against Defendant in February 2013 following a guilty plea to conspiracy to distribute cocaine and conspiracy to distribute marijuana. D.E. 1-3. Defendant was sentenced to 63 months of imprisonment, followed by five years of supervised release. *Id*. at 2-3. His imprisonment sentence was reduced to sixty months in January 2015. D.E. 1-4. He began his term of supervised release on June 27, 2016.

In September 2016, the United States Probation Office ("USPO") referred Defendant for a substance abuse assessment, and treatment was not recommended.

**I.**

On February 12, 2019, the USPO submitted a Supervised Release Violation Report ("the Report") that initiated these proceedings. It charges six violations, one of which the government eventually moved to dismiss. According to the Report:

> On November 25, 2018, the defendant was arrested and charged in Jefferson County District Court, Louisville, Kentucky, case number 18-F-19542, with one (1) count of Theft By Unlawful Taking $500 or More but Under $10,000 (KRS 514.030(2)(D), a Class D felony, term of imprisonment not less than 1 year nor more than 5 years). . . .  The defendant was released on a personal recognizance bond on November 26, 2018.  He is scheduled to appear for a preliminary hearing on March 15, 2019.

Based on this arrest on a Class D Kentucky felony, the Report charges in Violation #1 a violation of the supervised release condition requiring that Defendant not commit another federal, state, or local crime.  Although the Report contains a typographical error here, as acknowledged by counsel for the parties, this is a Grade B violation.

For Violation #2, the Report notes that the arrest occurred in Louisville, in the Western District of Kentucky.  Violation #2 charges a violation of the condition that Defendant not leave the Eastern District without permission of the Court or the probation officer.  Because Defendant did not obtain this permission, the Report charges a Grade C violation.  At the final hearing, the government moved to dismiss this charge on the basis that, at the time of the arrest, Defendant's supervision might not have been transferred from the Western District to the Eastern District.

Violation #3 charges a violation of the condition requiring Defendant to report any arrest to the probation officer within 72 hours.  Because Defendant did not notify the officer of the November 2018 arrest, Defendant is subject to another Grade C violation.

Violation #4 charges a violation of the condition forbidding Defendant from associating with any person convicted of a felony without permission from the probation officer.  According to the Report, "Upon questioning by this Officer, the defendant admitted he knew his codefendant in the case noted in Violation #1, Richard "Rick" Lee Kelly, was a convicted felon."  This is a Grade C violation.

Violation #5 charges a violation of the condition prohibiting the use of any controlled substance, except as prescribed by a physician. According to the Report, a urine specimen collected on January 31, 2019, tested positive for marijuana metabolite upon instant testing. Defendant denied using marijuana. But on February 5, Alere Toxicology confirmed the positive marijuana result. The specimen was also diluted. This is a Grade C violation.

Finally, Violation #6 charges a violation of the condition prohibiting the commission of another federal, state, or local crime and the condition prohibiting unlawful possession of a controlled substance. Noting the Sixth Circuit's decision that use of a controlled substance includes possession, the report characterizes Defendant's marijuana use as a violation of 21 U.S.C. § 844(a), possession of marijuana, a Class E felony. This is a Grade B violation.

The Court conducted an initial appearance pursuant to Rule 32.1 on March 4, 2019. D.E. 8. Defendant conceded probable cause regarding the alleged violations and waived his right to a preliminary hearing. *Id*. The United States moved for interim detention; Defendant did not argue for release. *Id.* Based on the heavy defense burden under 18 U.S.C. § 3143(a), the undersigned remanded Defendant to the custody of the United States Marshal. *Id*.

At the final hearing on March 12, 2019, Defendant was afforded all rights due under Rule 32.1 and 18 U.S.C. § 3583. D.E. 9. Defendant competently entered a knowing, voluntary, and intelligent stipulation to each violation except #2, and admitted the factual bases for these violations. The government thus established Violations #1 and #3-6 under the standard of § 3583(e). The government moved to dismiss Violation #2. The parties submitted an agreed recommendation of revocation with 18 months of incarceration. However, the parties disagreed as to whether additional post-incarceration supervision is appropriate.

## II.

The Court has evaluated the entire record, including the Report, accompanying documents, and the sentencing materials from the underlying Judgment. Additionally, the Court has considered all the § 3553 factors imported into the § 3583(e) analysis.

Under § 3583(e)(3), a defendant's maximum penalty for a supervised release violation hinges on the gravity of the underlying offense of conviction. Defendant pleaded guilty to two Class B felonies (enhanced on account of his criminal record). *See* D.E. 209. For a Class B felony, the maximum revocation sentence provided under § 3583 is three years of imprisonment. 18 U.S.C. § 3583(e)(3).

The Policy Statements in Chapter 7 of the Sentencing Guidelines provide advisory imprisonment ranges for revocation premised on criminal history (at the time of original sentencing) and the "grade" of the violation. *See United States v. Perez-Arellano*, 212 F. App'x 436, 438-39 (6th Cir. 2007). Under § 7B1.1, Defendant's admitted conduct would qualify as a Grade B violation, with respect to Violations #1 and #6, and Grade C violations with respect to the others. Given Defendant's criminal history category of V (the category at the time of the conviction) and Grade B violations,[1] Defendant's range, under the Revocation Table of Chapter 7, is 18 to 24 months.

A court may also re-impose supervised release, following revocation, for a maximum period that usually subtracts any term of incarceration imposed due to the violation. *See* 18 U.S.C. § 3583(b), (h). The post-revocation cap depends on the "term of supervised release authorized by statute for the offense that resulted in the original term of supervised release." *See*

---

[1] *See* U.S.S.G § 7B1.2(b) ("Where there is more than one violation of the conditions of supervision, or the violation includes conduct that constitutes more than one offense, the grade of the violation is determined by the violation having the most serious grade.").

4

18 U.S.C. § 3583(h).  Given the nature of Defendant's conviction, pursuant to 21 U.S.C. § 841(b)(1)(C), there is no maximum term of supervised release that can be re-imposed.

### III.

Because the parties agreed that a bottom-of-the-Guidelines sentence of 18 months' incarceration is appropriate, the argument centered on whether any additional supervised release should follow.  The government requested two years, the defense argued for none.

The government pointed out that two of the five admitted violations involved felony conduct—marijuana use and the pending state theft charge.  Defendant's PSR reveals a forty-year history of theft-related charges "integrated" with drug use and possession.  The government argued, "you have the exact cocktail now," meaning that the current violations also involve marijuana use commingled with theft.  Defendant has previously been on supervision in another federal case, and back then he failed six different urine tests on account of marijuana use.  Because Defendant appears undeterrable in relation to marijuana use, and because his marijuana use drives his other criminal conduct, the government recommended two years of supervision to provide additional deterrence to Defendant and protection for the public.  The government argued that if we could "fix" Defendant's marijuana use via supervision, then that would reduce the threat of new criminal conduct.

Concerning the requested 18 months of incarceration, the government argued that a sentence at the bottom of the range is appropriate because this is Defendant's first violation on the underlying federal charge and he went more than two and a half years without violating.  Defendant also accepted responsibility.  But, because it was a cluster of violations, a below-range penalty was not appropriate.  The government also stressed that the state charge remains pending, and Defendant may face additional punishment for his violation conduct.

Concerning the fact that Defendant received a significant downward departure at sentencing,[2] the government argued that it weighed in favor of imposing additional supervised release but did not affect the imprisonment recommendation. The government was not aware of what drove the downward departure, although Defendant stated at the hearing that it was because he provided substantial assistance.

The defense argued that Defendant's almost-three years of successful supervision was a stark contrast to the history presented in his PSR. Nevertheless, as Defendant indicated in his PSR interview, he has always smoked marijuana and expects that he always will. *See* PSR ¶ 18. The defense argued that imposing additional supervision would be setting up Defendant for failure because there is no indication he has the wherewithal to stop using marijuana.

Defendant addressed the Court. He said he did not admit marijuana use on the day of the January urine collection because a granddaughter had just been born and he wanted to see her. He told the Court that he does not drink or do pills or other drugs, but he is a "pot-head." He declared there is nothing anybody can do to deter him from smoking marijuana. He asked for no additional supervision because "it won't work." He denied that he stole anything (although he admitted to Violation #1), and said he would fight the state charge, whereas he typically is eager to plead guilty when he is guilty. Defendant stated that when he is released from his revocation sentence he will be 62 years old and he plans to sign up for disability and "smoke pot."

## IV.

To determine an appropriate revocation term of imprisonment, the Court has considered all the statutory factors imported into the § 3583(e) analysis, as well as the Guidelines Range. Congress mandates revocation in a case of this nature. By statute, the Court must revoke

---

[2] The Guidelines support an upward variance for supervised release violations following such leniency. *See* USSG 7B1.4, Application Note 4.

Defendant because he possessed a controlled substance. *See* 18 U.S.C. § 3583(g)(1); *United States v. Crace*, 207 F.3d 833, 836 (6th Cir. 2000) (equating use with possession).

The nature and circumstances of Defendant's underlying conviction for participating in a drug distribution conspiracy are serious. *See United States v. Johnson*, 640 F.3d 195, 203 (6th Cir. 2011) (explaining that this sentencing factor focuses upon the original offense rather than the violations of supervised release). He was caught transporting large quantities of drugs from San Diego to Louisville, and he admitted it was not his first time doing so.

Regarding his history and characteristics, Defendant's criminal history (category V) is impossible to ignore. Since the 1970s, he has racked up multiple theft and drug convictions. And he is clearly not kidding when he expresses no intention of refraining from marijuana use.

Regarding the need for training and treatment, Defendant has been evaluated, but has been told there is no inpatient treatment for marijuana addiction. There is no indication that any additional training or treatment would be helpful.

The need to avoid unwarranted sentencing disparities is addressed by a within-Guidelines sentence.

The Guidelines suggest that the ***primary*** wrong in the supervised release context is the violation of the Court's trust by an offender; the particular conduct is an important but secondary issue. *See* Guidelines 7 Pt. A(3)(b) ("[A]t revocation the court should sanction primarily the defendant's breach of trust, while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator."). The Court must impose a sentence that is sufficient, but not greater than necessary, to address Defendant's breach of trust and the other statutory goals imported into § 3583(e). Here, the breach of trust is severe to the

extent that he committed a cluster of violations, including felony conduct.  On the other hand, he did perform well for an extended period and he is generally candid with Probation and the Court.

For the reasons stated above, the Court finds that a sentence of 18 months, followed by no additional supervised release, is sufficient, but not greater than necessary, to meet the section 3553(a) factors incorporated into this analysis.  *See* 18 U.S.C. § 3583(e).  Upon his release, Defendant is likely to continue to use marijuana and to get in trouble with the law.  Further supervision would be a waste of resources and would not provide any significant deterrent effect beyond that provided by incarceration.

The defense requested shortening the period to object to this Recommendation to five days.  The government did not object.

Defendant requested that he be placed in the BOP facility closest to his home.  He also requested a medical facility on account of his two hernias and skin cancer.  The Court informed him that the BOP would evaluate him and determine whether he needed to be housed in a medical facility.

## V.

Based on the foregoing, the Court **RECOMMENDS**:

(1)    Defendant be found guilty of Violations #1, #3, #4, #5, and #6.

(2)    As requested by the government, Violation #2 be dismissed.

(3)    Revocation with a term of imprisonment of 18 months, with no supervised release to follow.

(4)    Housing at the BOP facility closest to Defendant's home.

The Court directs the parties to 28 U.S.C. § 636(b)(1) for appeal rights concerning this recommendation, issued under subsection (B) of the statute.  *See also* 18 U.S.C. § 3401(i).

Considering Defendant's request for a shortened objections period, as defined by § 636(b)(1), within **FIVE DAYS** after being served with a copy of this recommended decision, any party may serve and file written objections to any or all portions for consideration, *de novo*, by the District Court. Failure to make timely objection consistent with the statute and rule may, and normally will, result in waiver of further appeal to or review by the District Court and Court of Appeals. *See Thomas v. Arn*, 474 U.S. 140, 153-54 (1985); *United States v. Walters*, 638 F.2d 947, 950 (6th Cir. 1981).

Defendant's right of allocution under Rule 32.1 is preserved, as reflected in the record. Any waiver should comport with the Court's standard waiver form, available from the Clerk. Absent waiver, the matter will be placed on District Judge Boom's docket upon submission.

This the 13th day of March, 2019.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge